May it please the Court, my name is John Gordnier. I represent the appellants in this matter. If I may, with the permission of the Court, I'd like to reserve five minutes of time as rebuttal. You may do so. Just follow the time clock in front of you. Very well. Thank you, Your Honor. I'd like to begin, Your Honor, by turning to the issue of tolling. And I'd like to direct my comments initially to the issue of statutory tolling. It is the position of the appellants that the most recent case of Bonner v. Carey has applied Pace clearly to California and has applied the timeliness principles as enunciated in Pace to California. The appropriate place, I believe, to start in that regard is to point out that both the State rules regarding timeliness to determine whether the petition was timely filed. And in that connection, it is important to observe that at its discussion of both Saffold and the Chavis case, the Bonner Court observed that those matters had been – I believe the term that they used was impliedly repealed, but I think that it's clear from the Bonner case that the Bonner Court treated both Saffold and the Chavis case, which I believe was argued on Tuesday or Wednesday of this past week before the United States Supreme Court, as matters that were no longer appropriate from the standpoint of being binding precedent in this district. Well, now, on that point, don't we have to wait for the Supreme Court to tell us what they're going to decide? We can't just presume it. Well, there are some who would suggest that would be prudent, Your Honor. Okay. I believe, however – No matter how good your argument was last week. Yes. Indeed. All right. I would suggest, however, to the Court that regardless of the outcome in Chavis, I believe, as the Court would note from the papers that I submitted, which were submitted before the Chavis case had been taken before the United States Supreme Court, that it's my view that the position will be the same regardless of the outcome in Chavis. Well, I'm going to ask opposing counsel the same question. Should we defer submission in this case until we hear from the Supreme Court in Chavis or not? What's your view? Oh, darn. I hate questions like that, Your Honor. I think the prudent thing, obviously, would be to defer, but I don't believe the Court needs to. I would submit to the Court that if the Court wishes to be 100 percent sure, then perhaps deferring might be more appropriate, but I would again submit to the Court that the Court can go forward at this time on the strength of the Bonner case to decide this case. But the Chavis case is not precisely the same issue, is it? No, it is not, Your Honor. And I believe further that this particular case, as I've indicated in my papers, is unique, and it's unique on some of the substantive issues rather than the procedural issues, but I think it also has certain uniqueness with regard to the procedural issues. As this Court knows, the position that I have taken in this case is that Pope, which is cited in the footnote that was referred to in the Harris decision and referred to by the superior court at the time of its finding of untimeliness of the petition in this case, that Pope makes this particular case clearly untimely under the State rules, and given that Pope makes this case clearly untimely under the State rules, I would submit to this Court that it need go no further than Pace. And Pace takes the position, as the Court well knows, of saying that if a case is untimely under State rules, that, quote, is the end of the matter. Counsel, can you help me? I have to confess we have a number of these habeas cases on the calendar this weekend, and there's a similar issue raised in another case that we're going to hear later in the week. So if I've now got the two cases confused, you'll have to excuse me. But my question for you is, what do we do with the Ninth Circuit authority that addresses the question of whether or not the rule has been consistently applied in noncapital cases? I would submit, Your Honor, that the history of Pope is applied by the State courts. If one examines, for example, and I would be the first to admit that I did not give the Court all of the State cases that I believe are supportive, there are literally a hundred or more of them. But in the cases that I have cited and in the procedure that has been followed in State courts, consistently it has been the understanding of State practitioners since Pope or before Pope that it was necessary in ineffective assistance of counsel cases to make a choice, and that the choice to be made was made at the time of the filing of the direct appeal if the facts were outside of the record but known to counsel at the time the appeal was filed. That did not happen in this case. In this case, the Petitioner was faced with a clear choice. He could either raise the ineffective assistance of counsel as part of the direct appeal, relying on the facts then known in the record, or he could file his petition simultaneously with the direct appeal because the facts were outside of the record, thereby preserving the issue, or he could do neither. So let me make sure I understand your answer. If the Petitioner knows or, through the exercise of diligence, should know at the time that he is pursuing or should be pursuing his direct appeal that he might have an ineffective assistance of counsel claim, it is incumbent upon him to either raise it on direct appeal or simultaneously file a habeas petition if it requires the adjudication of facts that are outside the record in a piecemeal fashion? Is that your answer? The answer is correct with one minor addition to what the Court has articulated, Judge Tallman. The Pope rule is a — I've used the term, I believe, highly specific in my papers. The Pope rule assumes that the facts are known to counsel even though they are outside of the record at the time of the filing of the direct appeal. It is that which distinguishes it from the magistrate's judge — pardon me, the magistrate judge's reading of Harris. The magistrate judge in his findings and recommendations reads only part of Harris and does not read into his findings and recommendation that which Pope makes clear and which Harris clearly understands that Pope makes clear. And as this Court noted in Turner v. Campoy, what, again, the Petitioner here was faced with was a clear choice. The choice was either, as the Court has articulated it, making it part of the direct appeal or, given that the facts were known, and there's no dispute about that in this case, raising it by way of a petition filed in conjunction with the direct appeal. Petitioner here did neither, and for that reason, Petitioner here should be allowed tolling under neither theory, that is to say, either statutory nor equitable tolling. And I'll address the equitable briefly in a moment, Your Honor. But I think that there are two other points that I would like to make first in connection with the Pope matter. I've cited Stankiewicz as illustrative of one of the cases in which our Supreme Court denied the people. People's motion for timeliness dismissal was denied because of the Pope rule. I would suggest that if one reads the footnote in Stankiewicz most carefully, the Stankiewicz court suggests an even stronger or more stringent limitation than the Pope rule. I don't think Stankiewicz is the rule. I think Pope continues to be the rule. But I simply point that out to the Court to suggest that the idea of tolling is to go into a timely mode. The other point that I wish to make is that the Pope rule is not significantly different than, nor is the thinking behind the Pope rule significantly different than, the stay-in-abeyance procedure that is suggested both by Pace and adopted, I would suggest, by this Court in Bonner, the idea being that if you believe that there is a possibility that you may be faced with a change of law or there is, quote, some uncertainty in the law, the idea of a preventative habeas filing with a stay-in-abeyance procedure that allows you to exhaust and that allows you to preserve, in effect, the time frame should be done. I would suggest to you that Pope, which gets back to the idea of an orderly and prompt manner of raising and bunching, for lack of a better word, these issues, is precisely the same as suggested by the Supreme Court in Pace and this Court in Bonner. If I may, Your Honor, I'd like to move briefly to the issue of whether equitable tolling is available in this case. I would suggest it is not. The reason that I believe equitable tolling is unavailable in this particular case, Your Honor, is that we are looking at several questions. First, as the Court knows, at footnote 8 in page 1814 of the Supreme Court advance opinions, in the Pace case, the United States Supreme Court observes that it has not yet determined the issue whether equitable tolling is available in cases under the AEDPA. It assumes equitable tolling but does not decide equitable tolling. That is an open-end question. In this case, Your Honor, there's no question. I point the – I point out the Pace observation merely to point out that that issue does seem to be out there somewhere in the ozone, I guess. Would your position be that that – well, that may be well and good for the Ninth Circuit to declare that, but it would not be in the AEDPA unreasonable for California courts to refuse to extend the doctrines in the absence of Supreme Court determination of that issue? I think, Judge Talman, that a very good argument could be made based on that portion of Pace that I've just finished speaking about in the context of equitable tolling. If, by way of example, the Pace suggestion that you file what I'm going to refer to as a defensive habeas corpus writ. Or a protective writ. Or protective. If that procedure were filed – followed, if the Pope procedure were followed in the State court, there would never be an equitable tolling issue. So I think that you could make a clear argument that a logical extension of Pace, when faced with an appropriate case by the United States Supreme Court, would be to conclude that if, as the Court has strongly hinted, that protective filing is made, there would be no need for equitable tolling principles to be applied. I, of course, would be the last person to disagree with the jurisprudence of the Ninth Circuit. So – Can we take judicial notice of the fact that that has not been a consistent position of your office in other litigation? Have you talked to the Attorney General about this? Exactly. So long as you don't mention my name, you may, sir. All right. At any rate, the – I think the equitable tolling here is not available. I appreciate that counsel have cited those cases that talk about if, you know, if it was available on some theory that was directly or squarely raised in the court below but not relied upon, that it could be used by this Court. I think Rios answers that question. I think Rios is quite clear in suggesting that if it was not a ground upon which the district court relied, it is not a ground that this Court might rely on. And I would suggest further that if one examines this particular case and examines the findings and recommendations of the magistrate judge with regard to the motion to dismiss, what the Court will find is that the magistrate judge focused exactly on that period of time that, as a result of Saffold, as recognized by Bonner, isn't the germane period of time. The germane period of time would be the period of time that the State court focused on, which is the period of time before the filing of the State petition in the State court, not on the filing of the State habeas. I'm sorry. The time between the finding, the judgment, and the filing of the State habeas, not just on the time the State habeas was pending. And I think that Rios is clear in that regard. Alitoso, your Honor? Oh, I'm sorry. You indicated you were going to reserve some time for a rebuttal, and this may be a good time for you to do that. An excellent point, Your Honor. Thank you very much. Mr. Stetler? Yes. Sir Stetler, on behalf of the Petitioner Appellee, Robert Richardson, and may it please the Court. I want to begin with the assertion that Respondent has made that Pace clearly applies to the Ninth Circuit and specifically California timeliness rules. Now, we're all aware that Bonner v. Carey, which was recently decided by this Court, applied Pace. But there are a few problems with that decision which need to be made clear in this case. When Pace was — this Court in Bonner requested supplemental briefing on Pace. The counsel for the Petitioner in that case submitted two letter briefs, which were about three pages apiece regarding Pace. But it was specifically on the point of whether his client, Mr. Bonner, had been diligent in seeking — well, for purposes of equitable tolling, whether he had been diligent. So there was no discussion whatsoever and no briefing whatsoever of whether Pace should actually apply in the Ninth Circuit to California timeliness rules, which Mr. Richardson submits are not the clear-cut, clearly defined statutory jurisdictional time limits which were present in the Pace case. Wait a second. I mean, the principle of Pace, unless I'm missing something, is a declaration by the Supreme Court that timeliness is a condition to a properly filed habeas application, is it not? That's exactly right. And so why wouldn't it apply? I mean, I understand the particular problem with California having, you know, original jurisdiction at each level of its court system for filing original habeas corpus petitions, but I'm not sure I'm following your argument as to why that pronouncement by the Supreme Court would not be applicable in the Ninth Circuit as well as every other circuit in the country. Well, and again … Let me just say I have the same concern. I don't understand your Bonner argument. Pace is there, Supreme Court of the U.S. Bonner simply applied Pace to that case. And, I mean, are you asking us to revisit Bonner and overrule a prior decision of another court? Well, actually, before I get to the other points, specifically to that point, we're not asking that you revisit Bonner. But so this Court knows it was never briefed whether the issue that we're discussing, whether Pace should actually apply. And our position is that it is not as clear-cut as it sounds. And the Supreme Court even itself acknowledged the problems that we're having. So are you now arguing that everything in Bonner is dicta, there's no holding in the case that we're bound to follow? Oh, no, no. No. I realize that at this point, Bonner is something that we're bound by. But at this point, Bonner is also not final. There is a petition for rehearing that is due in about a month. And I am also aware that certain agencies will be asking leave of the Court to file amicus briefing, which is what should have been done in the first place in Bonner. The Court was ruling upon an issue which it had really no briefing. And so they can be ‑‑ Okay. So maybe we'll grant rehearing, either panel or end bank rehearing, and maybe you'll get some relief there. But what do you do with the state of the record with Richardson? You've got a Plumas County Superior Court finding relying upon Supreme Court that says, I find this petition was untimely. And why shouldn't we apply that factual finding and then look at the Supreme Court decision and say, untimely, not properly filed, dismissed? Well, if that were the case, if those were the facts that we were dealing with, it would be a much easier and more clear‑cut decision. But that's not what we're dealing with. The Pope rule that Respondent has been relying upon is clearly there is no rule. There ‑‑ he referred to over 100 cases which cite to people v. Pope. Well, let me ask you this. Is your concern more with the fact that California has this general reasonableness requirement as opposed to a 365‑day deadline like Congress said? Is that a problem? That's clearly one of the problems. There is no statutory jurisdictional time limit as they had in Pennsylvania in PACE, which said, you know, you have one year from the date of the finality of your conviction to file a habeas corpus or post‑conviction petition. We do not have that, especially in non‑capital habeas cases. So is your position then that unless the legislature, or I guess you could have it judicially created, although that's a separate problem, but would your position be that it must always have a definite period of time or else we can never declare that a petition is untimely under PACE? Under PACE, it's not a time limit if it's this amorphous reasonable diligence standard. You're not dealing with something that the petitioner has notice of ahead of time that I have one year from this date to file a petition. It's rather I have to be reasonably diligent, and I may be found to be timely, I may be found to be untimely. And what we get to is there's no safety valve protecting a petitioner's right to Federal review of his conviction. As Respondent noted, well, if you filed a protective petition in Federal court, then ask under Ryans v. Weber that that be held in abeyance. You'll be okay. Isn't that the — isn't that basically the rationale that our panel in Chavez followed in declaring that, well, we can't say that it's not properly filed if it hasn't been adjudicated as untimely at the time that it's filed, and therefore it's pending within the meaning of Artoos v. Bennett? Exactly. And I think the — So should we wait for the Supreme Court to decide Chavez in order to decide this case? Again, I think that was a good question, but in this — What's your view? My view on that is that it's unnecessary to wait for the Supreme Court to decide Chavez because we don't have a clear-cut application of Pace or Bonner because we don't have a timeliness ruling in the file. But we should wait for Bonner to be considered in terms of a petition for rehearing. Well, again, my position or our position is that there is no application of Bonner or Pace to our situation because there is no clear ruling in the trial court. The only reasoned opinion that we have to look at, because both the California Supreme Court and the court of appeal just denied the petition on the merits, the trial court simply denied on — in Ray Harris saying that an IAC claim, ineffective assistance of counsel claim, could be raised at the time of the direct appeal in a joined habeas corpus petition. That's not a timeliness finding. There was a — instead, that's a procedural bar finding, and one that we assert is neither adequate nor independent to bar federal habeas corpus review, but that's a separate issue. But that gets back to the problem the Supreme — It's implicit in that — in the Superior Court decision, though, is a determination that your client was not diligent in pursuing his IAC claim, that he knew enough facts to have included the claim in a direct appeal and for whatever reason failed to do so, and apparently did not give the Superior Court just cause for why he waited. Why isn't that an untimeliness determination? Well, the careful word that you chose there is — Exactly. Careful words that the Supreme Court has articulated. No, no. You said the implicit. You're right. And it's not explicit. That's the important part. That's what — that's what Pace and previously Carey v. Saffold, they were — in the U.S. Supreme Court, they were battling over what this — So you're trying to draw a distinction between untimeliness and a bar on some other ground? Is that what it is?  Well, what's the other ground? If it's not untimely, what's the reason for the Court's ruling? Pace did not overrule Artoos v. Bennett, which Artoos v. Bennett said a procedural bar is something that's applied claim by claim. That's something that does not bar — that does not affect the tolling of the statute. What affects the tolling of the statute is whether there was a condition to filing which was not met. In Pace, they said time limits, whatever their form, are conditions to filing. In California, when you are time barred, that's something that is applied claim by claim. Why would Pace need to overrule Artoos v. Bennett? As I remember the rule in Bennett, the question was whether or not the habeas application is properly filed. That's what the Supreme Court was deciding in Bennett. And in Pace, it declared that an untimely petition is not properly filed. It's the same thing as failing to deliver the papers to the court clerk on time or failing to pay the necessary filing fee. It's a condition to a properly filed habeas petition. So why are you surprised that the Supreme Court didn't overrule Artoos v. Bennett when all it seemed to be doing was explaining further what the term properly filed means? Because some are arguing that the procedural bar, the time bar that is common in California habeas petitions, should be perceived as a time limit or a condition to filing, as was decided about the Pennsylvania time limit statute in Pace. Artoos v. Bennett spoke of procedural bars being conditions to obtaining relief as opposed to conditions to filing a petition. So is there any theory at all under which there was a timely actual filing in this case? We argue that under California timeliness rules for a non-capital habeas petitioner There are no rules. There are no rules. of the type that were discussed in Pace. And that's why Pace should not apply, and that's why we believe Bonner did not have the, you know, the proper briefing before it to really measure the issue. Well, then what law are California State courts applying when they determine that the petition was too late? Diligence requirements are what they, going back to In re, Swain, and more recently in Clark and Robbins, which, of course, were capital cases. But they look at whether or not you were diligent in pursuing the investigation and presentation of your claims. But that's wholly separate from what the Court was dealing with. And when a court, a State court so determines, as it did here, what is the role of the habeas petition at that point? As the State court decided what here? We're saying that the State court never decided that it was untimely. It did not deny the petition as untimely, which is the language that was used in Pace. So are you essentially arguing that it's just a waiver of the claim as opposed to an untimeliness bar? In other words, he should have raised it on direct appeal because he had sufficient facts to know he had a claim, but because he didn't, he's waived the claim? It's essentially a procedural bar that can be looked at as a waiver, but it does not act as a time. Well, if it's not untimely, what is it? I mean, it seems to me it has to be one or the other. And I think your position is that the Court must have simply declared that he just waived the claim. Well, our position is that the Court may have determined that it was waived, and that was a what it was as a State procedural bar, which we allege is not independent or adequate and, therefore, could not bar the Federal habeas corpus review because the cases which were cited, Harris, Romero, Duvall, all occurred after the direct appeal was filed in Mr. Richardson's case. You can't expect a litigant to adhere to rules which were not in existence at the time that they were supposed to have complied with them. Harris came down, I believe, two months following the filing of his opening brief, and then Duvall and Romero were two and three years later. So, clearly, and I believe what happened was the Respondent was relying upon that in its briefing as why the claim should be procedurally barred, and the trial court just adopted those cases as the procedural bar. But, again, our argument is that that's not going to a time limit. That's going to whether or not you can obtain relief under a State procedural bar. Does it make a difference as to whether one may be an affirmative defense that the other is a jurisdictional bar, which ---- I think that is an important point. And, again, comparing the Pennsylvania statute to the California sort of judge-made rules about diligence, you know, I think that is a distinction. And just as an aside, we are aware that if you review the briefs in Chavez that were issued, apparently the office of the Attorney General has requested that the California Supreme Court come up with more defined timeliness rules so that we don't have these problems. Well, it would certainly make our life a whole lot easier if we had mini-EDPA. But I will leave that to you all. I think it would make everyone's life easier, but apparently they have responded that that's something for the legislature. So I don't think we're going to see anything happening any time soon. So the California Supreme Court can probably not grant that request from the Department of Justice? Exactly. All right. A couple more points on Bonner that I wanted to make is that, and this, of course, will be brought up in the petition for rehearing in that case, but Bonner violates Ninth Circuit precedent because it's a three-judge panel opinion which overrules prior Ninth Circuit precedents. Such as? What do you say it overruled? Well, by my ---- It certainly didn't explicitly overrule it. No, no. It did not explicitly overrule, but I think in application, it overrules at least six that I came up with, Dictato v. de Charme, Saffold v. Carey, Smith v. Duncan, Jenkins v. Johnson, Chavez v. Lamarck, Gaston v. Palmer. And there may be more. Now, these are all Ninth Circuit versions because some of those went to the Supreme  Court. Yes. And I was referring to Saffold v. Carey upon its return to the Ninth Circuit, an opinion I believe you authored. Now, I think the ---- each of those opinions dealt with whether or not the lack of diligence finding from the State court is an explicit ---- whether or not that's a procedural bar, a condition to obtaining relief, or a ---- a condition to filing. And all of those will now go out the window from another three-judge panel's decision in which there is no direct, explicit ruling from the U.S. Supreme Court which undermines those decisions. And that's something that a panel cannot do. That's better left to ---- Assume this argument was made on the petition for rehearing. This will be made in the petition for rehearing as far as they're filing it. It has to be filed. The decision only came down on October 6th, as I recall. And I believe they asked for more time, and it's due in about a month. So that's one of the points I believe they'll be making. Besides that, I believe it was ---- Bonner was both factually and legally wrong because there were actually two petitions, State petitions, that were pending at the same time in Bonner. One of them was never acted upon. The later petition was acted upon, and there was not an explicit ruling that it was untimely, which is what pace requires. But again, it was more of a successive procedural bar, which under Artuse v. Bennett wouldn't affect the tolling. But aside from the ---- the misinterpretation of the bar at issue is the fact that there was this other petition that was never procedurally barred or considered to be improperly filed. So under the facts, pace never should have been considered at all in Bonner. In addition, I believe Bonner, because there was no briefing on California's case, is really what needs to be examined carefully before this court can make a decision about whether or not pace could apply to such amorphous rules. And to go back to something that the appellant discussed, was the ---- what the U.S. Supreme Court said in pace to protect a litigant's right to federal habeas corpus review, you could file a protective petition with the district court, concurrently with your filing in the State court. That way, if you're unclear about whether or not you'll be eventually ruled to be untimely in the State court, then you've got this protective petition that is holding your place in Federal court. That doesn't work in Mr. Richardson's case, neither would it have in Mr. Bonner's case, because all that we know from the Supreme Court's case against Reines v. Weber is that now we are ---- Petitioners are allowed to file a mixed petition in Federal court which can be held in abeyance, something that has been available in the Ninth Circuit for some time, although Ninth Circuit precedent always allowed holding a fully exhausted petition in abeyance. And the difference is, in Reines v. Weber, they allowed for the mixed petition to be held in abeyance. Mr. Richardson had a totally unexhausted petition. There's no ---- Robertson, your time has expired. Okay. Thank you, Mr. Stedler. Thank you. Mr. Gordoneer, you have some reserve time. I appreciate that, Your Honor. Thank you. I'd like to begin, if I may, with the last point that counsel made. I believe counsel, with all due respect, misapprehends what I was suggesting to this Court. Counsel suggests that in Mr. Richardson's case, there was no way that he could have protected himself because he would have had to have filed a Federal habeas. That's not correct. Mr. Richardson had the ability to do precisely what is suggested in Pope, and that is to, at the same time he filed his direct appeal, file a State habeas petition. That is the appropriate procedure mentioned in Pope for the very good reasons, policy-wise, as I suggested in my initial comments to this Court, that the protective procedure is mentioned both in Pace and in Bonner. I would also like to talk, if I may briefly, about the ---- what I'm going to call the nonexistence theory, the idea that Pace is out there in the ozone, that Bonner really talked about it, but because they're going to file a petition for rehearing, my gosh, Pace doesn't really count. I'm sorry. I can't subscribe to that. The simple fact is that when one talks about the Bonner decision, I don't have before me anything that talks about this rehearing that is going to be filed. The Bonner decision on its face seems quite clear to me. The Bonner decision on its face says, as does Pace, that a time limit, regardless its form, whether it is statutory, whether it is procedural, that is to say, has grown up because of judicially made law, and an understanding by counsel practicing in front of the particular court system at issue, whether that is an appropriate rule to apply. Counsel suggests that the Pope rule was first enunciated in Harris. If the Court examines the record of this matter, and I will supply the particular citation from the clerk's record to the Court, the Court will find that in the briefing before the Superior Court, I offered Pope to the Court on a timeliness ground. The Court chose to cite Harris, which cites Pope. The Court in the Superior Court, that is to say, made it abundantly clear that it was summarily dismissing or denying the petition, the habeas petition, because it was not timely, that there had been over four years of delay. The idea that is suggested by the Norita case cited by counsel in their supplemental authorities, and by the way, I would observe for the record, counsel deserves credit for notifying me of the supplemental filing. I was able to look at the cases last evening. I appreciate counsel's courtesy. The Court should know that counsel complied. The Court appreciates that as well. Thank you. Thank you all. And the EEOC case, in which both, I believe only Judge Talman applied, but Judge Goodwin, I believe, was the author of the Norita case. And in Norita, the issue, I think, was correctly laid out, and that is that if one panel is faced with a set of facts or legal principles, and there has been no intervening United States Supreme Court authority that changes or modifies, then, indeed, one panel may not overrule another. I would submit that that is really the nub of the issue that counsel for appellee has with regard to PACE. That is the nub of their problem. PACE is an intervening United States Supreme Court opinion dealing expressly with timeliness and finding that any timeliness rule, regardless its form, and the last point that I wish to address that appellee made, Pope has been around for a long time. All of the cases I have cited in the briefing, the numerous other cases come from the time period of Pope which antedates or predates, I never can keep that straight, I apologize to the Court, which predates this Court's ruling in the Superior Court. It is clear that all of the cases that I have suggested to this Court and offered to this Court in which it says time and again, counsel filed a habeas petition in conjunction with, or at the same time as, he or she filed their direct appeal, clearly indicates that the understood rule of practice in the State of California was that the two would be filed in conjunction with one another, as Pope indicated, when the facts were known, when they were outside the record, and when the issue was ineffective assistance of counsel. I think that the Turner case is clearly the compelling authority in this regard. As this Court noted, there are two options. One of the two must be exercised by the litigant. If neither are exercised, the litigant has exposed himself, as was the case here with Mr. Richardson, to a finding that his filing later is not timely or appropriate. And that, Lady --" that, Your Honors, is the nub of the case, and I would submit it. Alitoso, as a practical matter, what happens in the Superior Courts? Do they actually stay the habeas case awaiting the outcome of the direct appeal, or do they just go ahead and proceed with discovery and so on on the habeas? I would suggest that the typical approach is to stay pending the outcome of the direct appeal. I cannot represent and would not represent to the Court that I am 100 percent sure that all of the cases would reflect that. But I would tell the Court that I believe that is the overwhelming prevailing rule. Okay. Thank you, counsel. If there are no further questions, thank you. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Tallman